FILED

2017 Mar-15  PM 05:09
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | |
|---|---|
| FELICIA RING, | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) **Case No.: 4:16-CV-42-VEH** |
| | ) |
| NANCY A. BERRYHILL, ACTING | ) |
| COMMISSIONER, SOCIAL | ) |
| SECURITY ADMINISTRATION, | ) |
| | ) |
| **Defendant**. | ) |

---

## MEMORANDUM OPINION

### INTRODUCTION

Plaintiff Felicia Ring ("Ms. Ring") brings this action under 42 U.S.C. § 405(g), Section 205(g) of the Social Security Act. She seeks review of a final adverse decision of the Commissioner of the Social Security Administration ("Commissioner"),[1] who denied her application for Supplemental Security Income

---

[1] Nancy A. Berryhill was named the Acting Commissioner on January 23, 2017. *See* https://www.ssa.gov/agency/commissioner.html. Under 42 U.S.C. § 405(g), "[a]ny action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office." Accordingly, pursuant to 42 U.S.C. § 405(g) and Rule 25(d) of the Federal Rules of Civil Procedure, the Court has substituted Nancy A. Berryhill for Carolyn W. Colvin in the case caption above and **HEREBY DIRECTS** the clerk to do the same party substitution on CM/ECF.

("SSI").[2] Ms. Ring timely pursued and exhausted her administrative remedies available before the Commissioner. The case is thus ripe for review under 42 U.S.C. § 405(g).[3] This Court finds that the Administrative Law Judge ("ALJ") applied the correct legal standards and that his decision — which has become the decision of the Commissioner — is supported by substantial evidence. Therefore, the Court **AFFIRMS** the decision denying benefits.

## STATEMENT OF THE CASE

Ms. Ring was twenty years old at the time of her hearing before the ALJ. Tr. 33. She has graduated from high school and received a certificate of completion. Tr. 33. She has no past work experience. Tr. 33. She claims she became disabled on June 25, 2012, due to injuries resulting from a motor vehicle accident. Tr. 28, 33.[4]

On June 25, 2012, Ms. Ring protectively filed a Title XVI application for SSI. Tr. 28. On August 24, 2012, the Commissioner initially denied her claim. Tr. 28. Ms. Ring timely filed a written request for a hearing on September 18, 2012. Tr. 28. The

---

[2]In general, the legal standards applied are the same regardless of whether a claimant seeks Disability Income Benefits ("DIB") or SSI. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations of statutes or regulations found in quoted court decisions.

[3]42 U.S.C. § 1383(c)(3) renders the judicial review provisions of 42 U.S.C. § 405(g) fully applicable to claims for SSI.

[4]She initially claimed an onset date of May 24, 2011, but amended it through counsel at the hearing. Tr. 28.

ALJ conducted a video hearing on the matter on January 23, 2014. Tr. 28. On April 16, 2014, he issued his opinion concluding Ms. Ring was not disabled and denying her benefits. Tr. 38. Through new counsel, Ms. Ring timely petitioned the Appeals Council to review the decision on May 29, 2014. Tr. 13. On November 9, 2015, the Appeals Council issued a denial of review on her claim. Tr. 1-7.

Ms. Ring filed a Complaint with this Court on January 8, 2016, seeking review of the Commissioner's determination. Doc. 1. The Commissioner answered on May 24, 2016. Doc. 8. The Court issued a Notice To Parties on May 25, 2016, setting certain deadlines and procedures. Doc. 10. Ms. Ring filed her supporting brief (doc. 11) on July 7, 2016, the Commissioner responded (doc. 13) on August 8, 2016, and Ms. Ring replied on August 11, 2016 (doc. 14). On October 17, 2016, Ms. Ring filed a Motion To Remand (doc. 15), which the Commissioner opposed (doc. 17) on December 2, 2016. Ms. Ring replied on December 6, 2016. (Doc. 18).

### STANDARD OF REVIEW

The Court's review of the Commissioner's decision is narrowly circumscribed. The function of this Court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This Court must "scrutinize the record as a whole to determine

if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

This Court must uphold factual findings that are supported by substantial evidence. However, it reviews the ALJ's legal conclusions de novo because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the Court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the Court with sufficient reasoning for determining that the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[5] The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically

---

[5]The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499, revised as of April 1, 2007.

determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish an entitlement to disability benefits, a claimant must provide evidence about a "physical or mental impairment" that "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

(1)    whether the claimant is currently employed;

(2)    whether the claimant has a severe impairment;

(3)    whether the claimant's impairment meets or equals an impairment listed by the Commissioner;

(4)    whether the claimant can perform his or her past work; and

(5)    whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).

5

The sequential analysis goes as follows:

> Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job.

*Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995).

The Commissioner must further show that such work exists in the national economy in significant numbers. *Id.*

## ALJ FINDINGS

After consideration of the entire record, the ALJ made the following findings:

1.    Ms. Ring had not engaged in substantial gainful activity since June 25, 2012, the application date.

2.    She had the following severe impairments: status post femoral shaft fracture, status post humerus fracture, status post pelvis fracture, status post cervical instrumentation and removal, dyslexia, obesity, chronic depression, and chronic pain syndrome.

3.    She did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

4.    She had the residual functioning capacity ("RFC") to perform the full range of sedentary, unskilled work as defined in 20 CFR 416.967(a).

5.    She had no past relevant work.

6.    She was born on [redacted], 1993, and was 18 years old, which is defined as a younger individual age 18-44, on the date the application was filed.

7.    She had at least a high school education and was able to communicate in English.

8.    Transferability of job skills was not an issue because she had no past relevant work.

9.    Considering her age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that she could perform.

10.   Ms. Ring had not been under a disability, as defined in the Social Security Act, from June 25, 2012, through the date of the decision.

Tr. 28-38.

## DISCUSSION

The Court may only reverse a finding of the Commissioner if it is not supported by substantial evidence. 42 U.S.C. § 405(g). "This does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)). However, the Court "abstains from reweighing the evidence or substituting its own judgment for that of the [Commissioner]." *Id.* (citation omitted).

Ms. Ring urges this Court to reverse the Commissioner's decision to deny her benefits on three grounds: (1) "The Denial Was Not Based on Substantial Evidence When Considering the Evidence Submitted to the Appeals Council" (doc. 11 at 11-

7

15); (2) "The Appeals Council Failed to Review Dr. Ripka's Evaluation Solely because It Was Dated after the ALJ's Decision" (*id*. at 15-17); and (3) "The ALJ Failed to State Adequate Reasons for Finding Claimant Not Credible" (*id*. at 17-22).

After careful review, the Court concludes that Ms. Ring's third issue has been waived but that, having fully considered this waived issue as well as the others set out above, the ALJ's findings are supported by substantial evidence and that both the ALJ and the Appeals Council applied correct legal standards.

## 1.   The Appeals Council Correctly Determined that Dr. Ripka's Statement Was Not Chronologically Relevant

"With a few exceptions, the claimant is allowed to present new evidence at each stage of this administrative process," including before the Appeals Council. *Ingram v. Comm'r of Soc. Sec. Admin*, 496 F.3d 1253, 1261 (11th Cir. 2007) (citing 20 C.F.R. 404.900(b)). Even though the Appeals Council is not required to review the ALJ's denial of benefits, 20 C.F.R. § 416.1470(b), it "must consider new, material, and chronologically relevant evidence" that the claimant submits. *Id.*; *see also* 20 C.F.R. §§ 404.970(b) ("If new and material evidence is submitted . . . the Appeals Council shall evaluate the entire record including the new and material evidence submitted if it relates to the period on or before the date of the administrative law judge hearing decision.") (emphasis supplied). The new

8

evidence is material if it is "relevant and probative so that there is a reasonable possibility that it would change the administrative result." *Hyde v. Bowen*, 823 F.2d 456, 459 (11th Cir. 1987) (citations omitted). It is chronologically relevant if "it relates to the period on or before the date of the [ALJ] hearing decision." 20 C.F.R. § 404.970(b). If these conditions are satisfied, the Appeals Council ("AC") must then review the case to see whether the ALJ's "action, findings, or conclusion is contrary to the weight of the evidence currently of record." *Id.*

Ms. Ring submitted additional evidence to the Appeals Council. That additional evidence included 108 pages of educational records from Buncombe County Schools, dated October 13, 1999 through April 30, 2012. Tr. 2. Immediately after referencing this additional evidence, the Appeals Council stated:

> We considered whether the Administrative Law Judge's action, findings, or conclusion is contrary to the weight of evidence currently of record. We found that this information does not provide a basis for changing the Administrative Law Judge's decision.

Tr. 2.

Ms. Ring apparently does not object to this aspect of the Appeals Council's denial, as she does not reference it anywhere. What she does discuss is the next aspect of the denial. There, the Appeals Council stated:

> We also looked at a medical source statement from Dr. Ripka, dated September 10, 2014 (5 pages). The Administrative Law Judge

9

decided your case through April 16, 2014. **This new information is about a later time.** Therefore, it does not affect the decision about whether you were disabled beginning on or before April 16, 2014.

If you want us to consider whether you were disabled after April 16, 2014, you need to apply again.

Tr. 2 (emphasis supplied).

Thus, the Appeals Council rejected Dr. Ripka's medical source statement ("IME") because they found that it was not <u>chronologically relevant</u>. This Court must now decide whether that determination was in error.[6]

Dr. Ripka's IME is dated September 10, 2014, and references a consultation that occurred on September 8, 2014. Tr. 9-12.[7] Ms. Ring argues that the IME is new, material, and chronologically relevant. Specifically, she sets out in her brief the following:

> **9/10/14 (R-8-12)**
> IME. Review of systems: Fatigue/weakness, grasp is weak, cannot hold things w/o dropping them has ringing in her ears; almost constant nausea; menses every other week; muscle/joint stiffness that lasts all day w/muscle weakness, tenderness, particularly of L knee, R hip/arm/wrist; migraine headaches; dizziness which may be orthostatic hypotension; memory loss and retrograde amnesia; had to change positions from sitting to standing several times for comfort;

---

[6]Ms. Ring argues that the Appeals Council "refused to review Dr. Ripka's evaluation **solely** because it was dated after the ALJ Decision without determining if the evaluation was chronologically relevant." (Doc. 11 at 15)(emphasis in original). In making that argument, Ms. Ring ignores the statement quoted above and set out in bold in this opinion.

[7]The Physical Capacities Evaluation signed by Dr. Ripka is found at Tr. 8.

neck rotation limited by 15º bilaterally; bilateral leg pain throughout
exam, radiating up into mid-back; very minimal grip strength; supine
straight leg raise was + bilaterally at 50º, Achilles reflex 3/4 on R, 2/4
on L; no dorsiflexion on L foot, foot drop on L, so she walks slowly
to prevent falls. Discussion: has dyslexia which has been
inadequately treated; post-concussion syndrome w/retrograde
amnesia/memory loss; PTSD; migraine headaches; hx of sleep apnea;
healed multiple fractures of L humerus, L femur, both sacroiliac
joints; chronic pain syndrome, **chronic drop foot on L**; marked
weakness of grip, GERD.

**Limitations**: Markedly limited in any use of hands bilaterally due to
poor grip strength; no lifting, carrying, manipulating, or push/pull
motions; use a keyboard only rarely. Because of her chronic pain, she
would need the option of changing positions at will, would be
expected to be lying down or sitting with legs propped approximately
6 hours per day. Due to left foot drop, she is severely limited in her
ability to walk, and must be able to move slowly to prevent falls. She
would be a danger to herself and others around machinery. She is
restricted from ladders, heights, and operating machinery. Due to
dyslexia which was diagnosed at Alabama Scottish Rite Foundation
in 2002, she is severely limited in reading.

BP: 116/84

(Doc. 11 at 12)(emphasis supplied by counsel for Ms. Ring).

Remember that the ALJ found that Ms. Ring **had the following severe
impairments**: status post femoral shaft fracture, status post humerus fracture,
status post pelvis fracture, status post cervical instrumentation and removal,
dyslexia, obesity, chronic depression, and chronic pain syndrome. Further, even
the "drop foot L" emphasized by Ms. Ring is not new. *See* Tr. 168, referencing
drop foot syndrome.

11

To the extent that, as Ms. Ring argues, the IME shows that Ms. Ring "has not recovered from her severe accident of 5/24/11," that argument was directly before the ALJ and acknowledged in his determination.[8] There simply is nothing "new" in the IME, unless it is that Ms. Ring's condition has continued to deteriorate.[9] However, the IME does <u>not</u> show that Ms. Ring's condition was worse <u>on the date of the ALJ's adverse determination</u> than the ALJ found it to be. And the Appeals Council was not required to reconsider or reweigh evidence that was before the ALJ (*Ingram*, 496 F.3d at 1261; *see also* 20 C.F.R. §§ 404.970(b)). Ms. Ring's arguments that arise from the Appeals Council and its treatment of Dr. Ripka's IME (her first and second issues) are rejected.

## 2.   <u>Ms. Ring Has Waived any Argument Regarding her Allegedly Disabling Symptoms</u>

The Court agrees with the Commissioner that Ms. Ring "has waived any argument regarding her allegedly disabling symptoms by not developing [any such argument]" (doc. 13 at 10) in her initial brief (doc. 11).

To preserve an issue for appeal, the party must raise the "specific

---

[8] *See* Tr. 33 (discussing Ms. Ring's report of the motor vehicle accident and her resulting injuries).

[9] In fact, Ms. Ring admits the IME does not provide "new" medical information about Ms. Ring when she states: "The IME submitted by an examining physician required a remand especially when the opinion is consistent with other treatment records [that were before the ALJ]." (Doc. 11 at 15).

issue to the district court" so that the district court has "an opportunity to consider the issue and rule on it." *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999). Generally, this means that the issue must be plainly and prominently raised, with supporting arguments and citations to the evidence and to relevant authority. *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014).

*Morrison v. Comm'r of Soc. Sec.*, 660 F. App'x 829, 832 (11th Cir. 2016)[10]

(reversing district court's finding of waiver where the plaintiff "adequately raised the specific issue" by "devot[ing] a discrete section of his brief to the issue," "support[ing] his argument with citations to the record and to supporting authority," and "develop[ing] his argument with enough specificity to give the district court the opportunity to address the issue and rule on it."). Ms. Ring disputes the Commissioner's waiver argument. In her reply, she states that "Claimant has not waived this issue [that the ALJ failed to state adequate reasons for finding Ms. Ring's claims not credible]." (Doc. 14 at 9). However, in her initial brief, she states as one of her three "Errors of Law" that "3. The ALJ failed to state adequate reasons for finding Claimant not credible" (doc. 11 at 2), nowhere in her brief does she "develop h[er] argument with enough specificity to give the district court the opportunity to address the issue and rule on it." *Morrison*, 660 F. App'x at 832. The portion of Ms. Ring's brief on which she relies to show this error

---

[10] In the Eleventh Circuit, unpublished decisions are not binding precedent, but they may be cited as persuasive authority. 11th Cir. R. 36-2.

begins at page 17 and ends at page 22. She clearly identified that this is the issue

being addressed in this portion. (Doc. 11 at 17). She sets out the ALJ's "not

entirely credible" conclusion. (*Id*. at 18). She sets out relevant case law regarding

the pain standard as applied in the Eleventh Circuit. (*Id*. at 18-19). She then sets

out Ms. Ring's "testi[mony] regarding her painful condition." (*Id*. at 19-21). She

then includes only one sentence criticizing the ALJ's alleged failure to adequately

articulate his reasons for finding Ms. Ring's statements of the level of pain she

experiences not entirely credible, and that one sentence is wholly conclusory.

Specifically, she states, "The 'reasons' set out in the body of the decision by the

ALJ are not adequate reasons for finding claimant not credible." (*Id*. at 21).

Nowhere does she set out those reasons, much less explain why, in the context of

her testimony (which is included in her brief) regarding her "painful condition"

and applying relevant law, those reasons are not adequate.

    Simply put, Ms. Ring advances no argument that even attempts to tie this

issue to the evidence and to relevant authority. This is not enough. *Singh v. U.S.*

*Att'y Gen.*, 561 F.3d 1275, 1278 (11th Cir.2009) (explaining that "an appellant's

brief must include an argument containing appellant's contentions and the reasons

for them, with citations to the authorities and parts of the record on which the

appellant relies," and that "simply stating that an issue exists, without further

14

argument or discussion, constitutes abandonment of that issue and precludes our considering the issue on appeal") (quotation marks omitted).[11]

Additionally, Ms. Ring's argument is based on a faulty premise: that the ALJ found "[Ms. Ring] not credible." (Doc. 11 at 21). This the ALJ did not do. Rather, he found her "statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms [were] not substantiated by objective medical evidence" and accordingly "made a finding on the <u>credibility of the statements</u> based on a consideration of the entire case record." Tr. 32 (emphasis supplied); *see also* Tr. 35 (setting out Ms. Ring's allegations of "severe pain and that she can only stand for 10 minutes at a time and sit for 15 minutes at a time" and her "report[] that she experiences falls as a result of her impairments, and that she has to sit with her feet elevated" and then setting out and discussing"the

---

[11]Failing to explain the "why" (or "how") apparently is not unusual for Ms. Ring's counsel. *See e.g. Gaskey v. Colvin*, No. 4:12-CV-3833-AKK, 2014 WL 4809410, at *4 and *7 (N.D. Ala. Sept. 26, 2014) (twice finding a failure to meet the *Singh* standard for lack of argument on an issue); *Reynolds v. Wilson*, No. 4:14-CV-02038-RDP, 2016 WL 1117688, at *9 (N.D. Ala. Mar. 22, 2016), *aff'd sub nom. Reynolds v. Soc. Sec. Admin.*, No. 16-12826, 2017 WL 540990 (11th Cir. Feb. 10, 2017) (unpublished) (finding *Singh* not met due to failure to "substantiate Plaintiff's broad statement that substantial evidence does not support the ALJ's decision."); *Shadwrick v. Colvin*, No. 4:14-CV-1371-SLB, 2015 WL 5306453, at *6 (N.D. Ala. Sept. 10, 2015), appeal dismissed (Dec. 28, 2015) (same); *Hearn v. Colvin*, No. 4:12-CV-3892-AKK, 2014 WL 4809421, at *8 (N.D. Ala. Sept. 26, 2014), *aff'd sub nom. Hearn v. Comm'r, Soc. Sec. Admin.*, 619 F. App'x 892 (11th Cir. 2015) (unpublished) (same on appeal); *McGatha v. Colvin*, No. 4:14-CV-281-RDP, 2015 WL 4656393, at *10 (N.D. Ala. Aug. 6, 2015) (same); *Norris v. Colvin*, No. 2:14-CV-1164-AKK, 2015 WL 631194, at *7 fn. 6 (N.D. Ala. Feb. 13, 2015) (same).

objective medical evidence [which the ALJ found] does not support the level of limitation alleged by [Ms. Ring]").

**3.     In any Event, Substantial Evidence Supports the ALJ's Decision not To Accept Ms. Ring's Claims of Disabling Symptoms, and his Reasons Were Clearly Articulated**

In addition to the objective evidence of record, the ALJ must consider all the claimant's symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. 20 C.F.R. § 404.1529(a). A three-part "pain standard" applies when a claimant attempts to establish disability through his or her own testimony of pain or other subjective symptoms. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). A claimant must show: (1) objective medical evidence of an underlying medical condition and either (2) objective medical evidence that substantiates the severity of the pain from the condition or (3) that the objectively determined medical condition is of sufficient severity that it would reasonably be expected to produce the pain alleged. *Id*.; *Wilson v. Barnhart*, 284 F.3d at 1225.

The ALJ can make credibility determinations regarding a claimant's subjective complaints and must provide specific reasons for the credibility finding. *Holt*, 921 F.2d at 1223. When the ALJ discredits the claimant's subjective testimony, the ALJ must articulate explicit and adequate reasons for doing so.

16

*Foote v. Chater*, 67 F.3d at 1561–62; *see also Holt*, 921 F.2d at 1223 ("[T]he ALJ's discretionary power to determine the credibility of testimony is limited by his obligation to place on the record explicit and adequate reasons for rejecting that testimony."). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. *Foote*, 67 F.3d. at 1562.

When evaluating a claimant's subjective symptoms, the ALJ must consider such things as: (1) the claimant's daily activities; (2) the nature and intensity of pain and other symptoms; (3) precipitating and aggravating factors; (4) effects of medications; and (5) treatment or measures taken by the claimant for relief of symptoms. 20 C.F.R. § 404.1529(c)(3). The credibility determination does not need to cite particular phrases or formulations. However, it cannot merely be a broad rejection that is not enough to enable the reviewing court to conclude that the ALJ considered the medical condition as a whole. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).

In this case, the ALJ determined, "[a]fter careful consideration of the entire record, ... [Ms. Ring] has the residual functioning capacity ('RFC') to perform the full range of sedentary, unskilled work as defined in 20 CFR 416.967(a)." Tr. 32. Supporting this finding are three and one-half single-spaced pages of detailed

17

explanation, which the Court sets out below.[12]

> In making this finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 416.929 and SSRs 96-4p and 96-7p. The undersigned has also considered opinion evidence in accordance with the requirements of 20 CFR 416.927 and SSRs 96-2p, 96-Sp, 96-6p and 06-3p.

> In considering the claimant's symptoms, the undersigned must follow a two-step process in  which it must first be determined whether there is an underlying medically determinable physical or mental impairment( s)--i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques--that could reasonably be expected to produce the claimant's pain or other symptoms.

> Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, the undersigned must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functioning. For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned must make a finding on the credibility of the statements based on a consideration of the entire case record.

> The claimant testified that she is 20 years old, and that she graduated high school and received a certificate of completion. She testified that she is not working, that she is single, and that she lives with her grandparents. The claimant alleged that she was in special education

---

[12]The Court would not ordinarily set out this finding in such detail but does so here because Ms. Ring has alleged that the ALJ "cherry picked" evidence when considering the evidence as a whole.

classes in school because she has severe dyslexia. She reported that she cannot read a newspaper very well. She stated that she would need help but that she could read a grocery list. She testified that she has a driver's license but had to take the driver's test orally.

The claimant alleged that she cannot work because of injuries that resulted from a motor vehicle accident that she was involved in during 2011. She reported that the accident caused her to have several broken bones and fractures mostly on her left side. She alleged that she has pain in her back and in her hips when she sits, and that when she stands she has pain through her whole body. The claimant testified that when she walks that her foot drops and that she has to concentrate to keep from falling. She alleged that it happens often, and that she has little control over it. She reported that she has constant pain that is made worse by walking or sitting for too long. She alleged that when it is cold her arm turns purple, and that she has sharp pain going through her arm and legs. The claimant also alleged that she has difficulty sleeping, and that she only gets an hour of sleep per night. She testified that she is on sleeping pills now which has improved her sleeping. She reported with the medication she sleeps 4 to 8 hours, but that she feels a little groggy when she wakes up but it goes away. She alleged that her grandmother does the chores, and that she tries to help but that she can barely stand to do dishes because of her pain. She reported that she goes with her grandmother to the store but is only able to push the buggy.

The claimant alleged that she can only stand for 10 minutes before she is in severe pain, that she can only sit for 15 minutes, and that she can only walk for 10 minutes. She alleged that she cannot squat or bend. She reported that she is able to dress herself. She testified that she spends the majority of her time on the couch with her feet elevated or walking back and forth down the hall. The claimant testified that she takes medication for her neuropathy and for her migraines which has been helpful. She alleged that the migraines make her nauseous and sensitive to light and movements. She stated that she only has migraines once per month now. She alleged that her migraines last on average a week. She testified that her new medicine

works better and that she has not had a migraine in a month. The claimant alleged that on a warm, normal day that her pain is moderate, but on a cold and rainy day that her pain is severe. She alleged that if she is on her feet she will have cramps. She reported that she fell yesterday because of her foot drop while at the mall visiting with friends. She stated that she does not have any social activities or friends. She testified that she is 5 feet 4 inches tall and weighs 230 pounds. She alleged that she has gained 100 pounds since the car accident.

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.

The record indicates that on August 3, 2012, the claimant was seen at UAB Highlands by Jason Lowe, M.D., for a follow up regarding her femoral shaft fracture, fracture of pelvis, and humerus fracture (Exhibit 2F). She was described as doing well with some generalized achiness over her entire body when it rains. She reported a persistent foot drop that has been present since the accident with no evidence of return to function. She was noted to be alert and oriented with no focal deficits. She was cooperative with an appropriate mood and affect. The claimant ambulated without a limp or assistive device, and her hip flexion was 100 degrees in the left hip. She had a range of motion of 0 to 130 degrees on the left. X-ray imaging showed a well healed and aligned pelvic ring and left femoral shaft. She had very mild widening of the sacroiliac joints in her left pelvis which was described as stable. The diagnosis was femoral shaft fracture, fracture of pelvis, and humerus fracture. She was described as clinically and radiographically healed in all regards. Dr. Lowe stated that the claimant could follow up with him as needed.

The claimant was evaluated by consultative examiner Sathyan Iyer, M.D., on August 18, 2012 (Exhibit 3F). The claimant complained of

pain shooting over the left lower extremity and some tingly feeling.
Dr. Iyer noted that the claimant walks with a limp on the left leg. The
claimant reported that she was in a motor vehicle accident one year
ago which caused fractures of the cervical vertebrae, left humerus,
left femur, and pelvis. She stated that as a result of the accident she
had an open reduction and internal fixation of the left femur as well
as surgeries on her neck, left arm, and pelvis. She reported that she
takes over-the-counter medication. Upon examination, she had a
blood pressure reading of 143/78 and was noted to weigh 214.5
pounds. She was noted to be in no acute distress and as able to stand
without assistance. Dr. Iyer noted that the claimant walked with a
limp on the left leg. Her left foot was described as appearing floppy.
She was  noted to not have any control over the left foot while
walking. Dr. Iyer stated that the claimant could not walk on her left
heel or tiptoes, and that she could squat partially. The claimant
reported that she has gotten a prescription for a foot brace but has not
used it yet. She had no assistive device.

The claimant's lungs were clear to auscultation with no rales, rhonchi,
or dullness noted (Exhibit 3F). She had a full range of motion in her
neck, shoulders, elbows, and wrists. Her grip strength and opposition
functions were noted to be normal. Her muscle power of the upper
extremities was described as normal. The claimant had anterior
flexion of 60 degrees and extension of 15 degrees. She was noted to
have a full lateral flexion and rotation motion of the lumbar spine. Dr.
Iyer described her as having a full range of motion of the hips, knees,
and right ankle. The claimant was noted to not have any active range
of motion possible in her left ankle. However, she was described as
passively able to move her left ankle in all directions. Her muscle
power of the right lower extremity was normal and that of the left
lower extremity was decreased and estimated to be 4/5. Her cranial
nerves were intact. Her deep tendon reflexes were present over the
right knee and absent over the left knee and left ankle. The Romberg's
sign was negative. She had a normal range of motion in her cervical
spine. The claimant also had a normal right and left lateral flexion
and right and left lateral rotation. She had a normal range of motion in
her right and left hip. She had a normal flexion in her right and left

21

knee. She also had a normal range of motion in her right and left shoulder and right and left elbow and forearm. Her dexterity and grip strength were normal.

Dr. Iyer 's impression was left foot drop with atrophy of the left calf muscle suggestive of traumatic neuropathy, and history of motor vehicle accident a year ago which caused fracture of the left femur and required open reduction and internal fixation (Exhibit 3F). Dr. Iyer noted that during the accident the claimant suffered a fracture of the left humerus, cervical spine, and pelvis. He also described the claimant as having a history of dyslexia and of being overweight. Dr. Iyer opined that the claimant has an impairment of functions involving standing, walking, climbing, squatting, and carrying heavy objects while walking. He stated that she does not have limitations of functions involving sitting, handling, hearing, or speaking.

The claimant was evaluated at Quality of Life on December 5, 2012, regarding her chronic pain and obesity (Exhibit 4F). Her chronic pain was described as improved with Mobic. She was described as having no concerns with the medication. When seen at Quality of Life on December 19, 2012, for a follow up she was noted to weigh 222 pounds. She reported pain as 0 on a 10- point scale.

The claimant was seen at Quality of Life on July 21, 2013, with complaints of joint pain and insomnia (Exhibit SF). She was positive for joint pain and back pain. She was assessed with acute pain due to trauma and insomnia.

On December 5, 2013, the claimant was seen at Quality of Life Health Care with complaints of depression and insomnia (Exhibit 7F). She was negative for gait disturbance, memory impairment, numbness in her extremities, seizures, or tremors. Upon examination, she was noted to have an appropriate mood and affect. Her depression was described as moderate. She was described as not agitated or anxious with no mood swings.

The claimant alleged at the hearing that she has severe pain and that

22

she can only stand for 10 minutes at a time and sit for 15 minutes at a time. She reported that she experiences falls as a result of her impairments, and that she has to sit with her feet elevated. However, the objective medical evidence does not support the level of limitation alleged by the claimant. As noted above, x-ray imaging from August 2012 showed the claimant to have only very mild widening of the sacroiliac joints in her left pelvis (Exhibit 2F). She was noted to have a well-healed and aligned left femoral shaft. Dr. Lowe described the claimant as walking without a limp or assistive device. After reviewing x-ray results, Dr. Lowe described the claimant as clinically and radiographically healed in all regards. Dr. Lowe released the claimant to see him as needed. Dr. Iyer did note that the claimant has a limp on the left leg and does not have any control over the left foot when walking (Exhibit 3F). However, Dr. Iyer also noted that the claimant has a normal range of motion in her cervical spine, right and left shoulder, right and left wrist, right and left elbow and forearm, and left and right hip. The claimant was observed to have a normal left and right lateral flexion and rotation in her lumbar spine. She had a normal range of motion in her right ankle, and a normal passive range of motion in her left ankle. Despite the claimant's alleged limitations and pain, Dr. Iyer found the claimant to have no limitation sitting.

Although the claimant alleges a disabling level of pain, the record indicates that the claimant has not been prescribed any powerful narcotics (Exhibit 8E). She told Dr. Iyer that she only takes over-the-counter medication (Exhibit 3F). The record also indicates that the claimant does not use an assistive device to walk. The vocational expert testified that the claimant's inability to push/pull with the lower extremity because of her foot drop would have no impact on most sedentary jobs. The objective medical evidence does not support the level of limitation alleged by the claimant or a finding that she experiences symptoms so severe as to be disabling. The undersigned has accounted for the claimant's status post femoral shaft fracture, status post humerus fracture, status post pelvis fracture, status post cervical instrumentation and removal, and chronic pain syndrome by limiting the claimant to sedentary work.

Regarding the claimant's depression, the claimant made no mention of any mental limitations in her Function Report (Exhibit 2E). Nor does the claimant allege having depression in her Disability Report (Exhibit 4E). There is no indication in the record that the claimant was diagnosed with depression prior to December 5, 2013 (Exhibit 7F). Further, when she was examined on December 5, 2013, her depressive symptoms were described as being only moderate. There is no indication the claimant has sought continuing, ongoing psychological treatment. The record indicates that the claimant has dyslexia. However, the claimant testified that she was able to pass her driver's license test orally. She also testified that she is able to read a grocery list with help. She reported in her Function Report that she follows oral instructions okay. She indicated that she has no problems with personal care. Further, she stated that she can count change, handle a savings account, and maintain a checkbook. The objective medical evidence and the claimant's statements regarding her activities of daily living do not support a finding that she experiences symptoms as a result of her depression and dyslexia so severe as to be disabling. The undersigned has accounted for the claimant's dyslexia and depression by limiting her to unskilled work.

The claimant's obesity, while not stated by any physician to be disabling, was considered in terms of its possible effects on the claimant's ability to work. Although obesity is no longer a listed impairment, the undersigned has considered Social Security Ruling 02-lp, effective September 12, 2002, which states that an individual with obesity will be found to meet the requirements of a listing if there is an impairment that, in combination with obesity, meetsthe criteria of a listing. Obesity may be found medically equivalent to a listed impairment if the obesity causes the same functional limitations as other impairments. It may also be determined that the combination of obesity and other impairments results in signs, symptoms, and laboratory findings that are of equal medical significance to one of the listings. In the present case the claimant's obesity is not so severe as to prevent all ambulation, reaching, orthopaedic and postural maneuvers. It does though, in combination with the claimant's status post femoral shaft fracture, status post humerus fracture, status post

24

pelvis fracture, status post cervical instrumentation and removal, significantly reduce her ability to stand and walk. A reduction to sedentary work is therefore warranted.

The undersigned affords great weight to the objective medical findings of the claimant's treatment providers discussed above and notes that they are consistent with the above-articulated residual functional capacity.

The undersigned affords great weight to the opinions of Dr. Iyer because they are consistent with his own objective findings and the claimant's treatment records as discussed above (Exhibit 3F).

The undersigned affords little weight to the opinions of non-examining state-agency physician Robert Estock, M.D., that the claimant has no severe mental impairments because the finding is not consistent with the findings of the claimant's treatment providers discussed above (Exhibit 2A).

Tr. 32-36.

Based on the Court's review of the record, it is clear that the ALJ considered Ms. Ring's full medical history and impairments properly and comprehensively as a whole. Accordingly, good cause existed for the ALJ not to give full credibility to Ms. Ring's allegations regarding the disabling impact of her impairments. As such, the Court concludes that the ALJ properly considered Ms. Ring's symptoms and the medical evidence, and not Ms. Ring's overall credibility, in determining Ms. Ring's ability to work in spite of her impairments, and made "clear the weight accorded to each item of evidence and the reasons for those decisions . . . ." *Himes*

25

*v. Comm'r of Soc. Sec.*, 585 Fed.Appx. 758, 764 (11th Cir. 2014).

### 4.    **Remand Is not Appropriate**

Ms. Ring has also filed a Motion To Remand (doc. 15), which the Commissioner has opposed (doc. 17) and to which Ms. Ring has replied (doc. 18). Ms. Ring contends that remand pursuant to Sentence 4 is necessary because the ALJ "failed to assess the intensity and persistence of [her] symptoms pursuant to Social Security Ruling 16-3p which became effective 3/28/16" and which, Ms. Ring claims, applies retroactively. (Doc. 15 at 1).

SSR 16-3p announced that the SSA would depart from "assess[ing] the 'credibility' of an applicant's statements," and instead "focus on determining the 'intensity and persistence of [the applicant's] symptoms.'" *Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016) (citing 81 Fed. Reg. 14166, 14167). Ms. Ring fails to cite <u>any</u> binding authority to support her contention that SSR 16-3p applies retroactively and instead cites *Cole*, a Seventh Circuit case which neither endorsed nor otherwise discussed <u>retroactive application</u> of SSR 16-3p.[13,14,15] She also cites

---

[13]What the Seventh Circuit did say about SSR 16-3p in that decision is set out in its entirety below.

Recently the Social Security Administration announced that it would no longer assess the "credibility" of an applicant's statements, but would instead focus on determining the "intensity and persistence of [the applicant's] symptoms." Social Security Ruling 16-3p; "Titles II and XVI: Evaluation of Symptoms in Disability Claims," 81 Fed. Reg. 14166, 14167 (effective March 28, 2016). The change in

*Mendenhall v. Colvin*, No. 3:14-cv-3389, 2016 WL 4250214 (C.D. Ill. Aug. 10, 2016), a non-binding out-of-circuit district court case which found that retroactive application was "appropriate," *id*. at *3. The Court agrees that SSR 16-3p is retrospective in its application. However, such application does not warrant remand.

By its terms, SSR 16-3p replaces SSR 96-7. The effect of the new ruling has been described as follows:

wording is meant to clarify that administrative law judges aren't in the business of impeaching claimants' character; obviously administrative law judges will continue to assess the credibility of pain assertions by applicants, especially as such *assertions* often cannot be either credited or rejected on the basis of medical evidence.

*Cole v. Colvin*, 831 F.3d at 412 (emphasis in original).

[14]Indeed, the Seventh Circuit explained that it was reversing the ALJ's denial of benefits because it was based "primarily on the odd ground that the 'timing of his filing appear[ed] to coincide with when his unemployment benefits were running out,' which the administrative judge said 'suggests that it was economic need, not disabling medical conditions, that prompted' Cole to apply for benefits" and for the additional improperly underdeveloped reason "that Cole had 'essentially had no treatment' between July 2009 and May 2011 ... [from which the ALJ "impli[ed] ... that he must have felt fine during this period, but the administrative law judge should have asked him why he had had essentially no treatment during that period. *See Garcia v. Colvin*, 741 F.3d 758, 761 (7th Cir. 2013); 81 Fed. Reg. 14166, 14168–71. In fact he had no health insurance then, which may explain why he didn't seek treatment. Or he may have accepted [Dr.] Hamlet's conclusion that further treatment would not have helped. *See* 81 Fed. Reg. 14166, 14168–71. The administrative law judge should also have explained the force of 'essentially' in her statement."

*Cole v. Colvin*, 831 F.3d at 415 (7th Cir. 2016).

[15]To be crystal clear, the *Cole* court *applied* SSR 16-3p, listing it after binding Seventh Circuit authority, showing that SSR 16-3p was in accord with existing law of the Seventh Circuit. (*See* prior footnote for string citation).

Both SSR 96-7p and SSR 16-13p direct that evaluation of a claimant's subjective symptoms shall consider all evidence in the record. Both Rulings also incorporate the regulations, 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3), that identify factors to be considered in evaluating the intensity, persistence and functionally-limiting effects of the symptoms, including a claimant's daily activities; the nature, duration, frequency and intensity of her symptoms; precipitating and aggravating factors; and the type of medication and other treatment or measures used for the relief of pain and other symptoms, *i.e.*, the familiar factors identified in *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984). But while SSR 96-7p expressly provided that a credibility finding was required to be made under those regulations, SSR 16-3p expressly provides that use of the term "credibility" was being eliminated because the SSA regulations did not use it. 81 F.R. at 14167. SSR 16-3p further provides: In [eliminating reference to "credibility"], we clarify that subjective symptom evaluation is not an examination of an individual's character. Instead, we will more closely follow our regulatory language regarding symptom evaluation. *Id*. SSR 16-3p also expressly provides that the ALJ may not make conclusory statements about having considered the symptoms, or merely recite the factors described in the regulations. Rather, the determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent, and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms. *Id*. at 14171.

*Lewis v. Colvin*, No. CV 15-00447-KD-B, 2017 WL 583392, at *6–7 (S.D. Ala. Jan. 26, 2017), report and recommendation adopted, No. CV 15-00447-KD-B, 2017 WL 581314 (S.D. Ala. Feb. 13, 2017)(quoting *Martsolf v. Colvin*, 2017 U.S. Dist. LEXIS 2748, *14-15, 2017 WL 77424, *5 (W.D. Mo. Jan. 9, 2017).

In *McVey v. Commissioner of Soc. Sec.*, 2016 U.S. Dist. LEXIS 93884, *14,

28

2016 WL 3901385, *5 (M.D. Fla. July 19, 2016), the court applied the new ruling

and held that the ALJ erred in basing her credibility determination on the fact that

the claimant had made inconsistent statements concerning his sobriety, a matter

which was unrelated to his impairment. The court explained the new ruling as

follows:

> Adjudicators must limit their evaluation to the individual's statements
> about his or her symptoms and the evidence in the record that is
> relevant to the individual's impairments. In evaluating an individual's
> symptoms, our adjudicators will not assess an individual's overall
> character or truthfulness in the manner typically used during an
> adversarial court litigation. The focus of the evaluation of an
> individual's symptoms should not be to determine whether he or she
> is a truthful person. Rather, our adjudicators will focus on whether the
> evidence establishes a medically determinable impairment that could
> reasonably be expected to produce the individual's symptoms and
> given the adjudicator's evaluation of the individual's symptoms,
> whether the intensity and persistence of the symptoms limit the
> individual's ability to perform work-related activities.

Id. (quoting Evaluation of Symptoms in Disability Claims, SSR 16-3p, 81 Fed.

Reg. 14166-01, 2016 WL 1119029 (Mar. 16, 2016)). *Mendenhall v. Colvin*, 2016

WL 4250214, which was relied upon by Ms. Ring, similarly found remand

appropriate because the ALJ's findings amounted to an "attack on Plaintiff's

character." *Id.* at *4.

Whether before or after SSR 16-3p, an ALJ may choose to discredit a

claimant's testimony about his or her symptoms. In doing so, the ALJ considers the

claimant's history, the medical signs and laboratory findings, the claimant's statements, statements by treating and non-treating physicians, and other evidence "*showing how [the claimant's] impairment(s) and any related symptoms affect [his or her] ability to work.*" 20 C.F.R. § 404.1529(a) (emphasis added). Thus, the ALJ's finding regarding a claimant's statements is limited to such statements that are about the claimant's pain and symptoms. *See* 20 C.F.R. § 404.1529(a) ("In evaluating the intensity and persistence of your symptoms, including pain, we will consider all of the available evidence, including your medical history, the medical signs and laboratory findings and statements about how your symptoms affect you.").

Because the ALJ in this case did not base his determination on statements by Ms. Ring that were unrelated to her impairments,[16] he violated neither the Regulation nor its clarification. "Retroactivity only matters if retroactive application could change the result, so there is no reason to remand if there is no chance the new rule would alter the outcome." *Wilson v. Colvin*, No. 5:14-CV-1784-VEH, 2016 WL 362407, at *4 (N.D. Ala. Jan. 29, 2016)(remanding based on intervening change in policy directing how to consider a claimant's drug addiction where the Court found that the new rule narrowed the evidence that

---

[16]No such statements are referenced in the determination.

could be utilized in the case on appeal and that such narrowing might well cause the ALJ to reach a different disability conclusion). In this case, remand would not change anything. Accordingly, the Motion is due to be, and hereby is, **DENIED**.

<h2 style="text-align:center">CONCLUSION</h2>

Based upon the Court's evaluation of the evidence in the record and the parties' submissions, the Court finds that the decision of the Commissioner is supported by substantial evidence and that she applied proper legal standards in arriving at it. Accordingly, the decision will be affirmed by separate order. The Motion To Remand is **DENIED**.

**DONE** and **ORDERED** this the 15th day of March, 2017.

**VIRGINIA EMERSON HOPKINS**
United States District Judge